IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **INTEGRANET PHYSICIAN RESOURCE, INC. d/b/a INTEGRANET HEALTH,** | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. |
| **TEXAS INDEPENDENT PROVIDERS, LLC; ROBERT VINCENT ROTH; CARLOS J. PALACIOS, M.D.; and WELLCARE OF TEXAS, INC.,** | § § § § § § | |
| *Defendants.* | § | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, Defendant WellCare of Texas, Inc. ("WellCare") hereby removes this action from the 295th Judicial District Court of Harris County, Texas, Cause No. 2018-26085 (the "State Court Action"), to the United States District Court for the Southern District of Texas, Houston Division. This Notice of Removal is supported as set forth below.

**PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

1. On April 18, 2018, Plaintiff IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health ("Plaintiff" or "INET") filed Plaintiff's Original Verified Petition, Application for Temporary Restraining Order, and Application for Injunctive Relief (the "Petition") in the 295th Judicial District Court of Harris County, Texas, styled *IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health, Plaintiff, v. Texas Independent Providers, LLC, Robert Vincent Roth, Carlos J. Palacios, M.D., and WellCare of Texas, Inc., Defendants*, Cause No. 2018-26085 (the "State Court Action").

**NOTICE OF REMOVAL**                                                                                           1

2. Because WellCare's removal is pursuant to 28 U.S.C. § 1442, the Federal Officer Statute, consent of the other defendants named in the case is not required as a prerequisite to removal. *See Freeze v. Coastal Bend Foot Specialist*, No. C-06-481, 2006 U.S. Dist. LEXIS 87156, at *10 (S.D. Tex. Dec. 1, 2006).

3. In compliance with 28 USC § 1446(a) and Local Rule 81, a true and correct copy of (1) Index of Matters Being Filed; (2) Copies of documents on file in the State Court Action, Cause No. 2018-26085 with the Harris County District Clerk including the Docket Sheet, all executed process in the case, pleadings asserting causes of action, and all orders signed by the state judge; (3) List of All Counsel of Record; and (4) Federal Civil Cover Sheet is attached hereto as **Exhibit A**.

4. Plaintiff filed the Petition on April 18, 2018. WellCare accepted service of process of the Petition on April 25, 2018. Consequently, this notice of removal is timely filed under 28 U.S.C. § 1446(b) within 30 days of service of the initial pleading setting forth the claim for relief.

5. No responsive pleadings have been filed by WellCare and WellCare expressly reserves its rights under Federal Rule of Civil Procedure 81 to answer or present other defenses or objections in accordance with the Federal Rules of Civil Procedure, including but not limited to enforcing the arbitration provision in the parties' agreement.

6. Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed to the district court of the United States for the district and division embracing the place where the action is filed. *See* 28 U.S.C. § 1441. The Houston Division of the Southern District of Texas is the United States district and division embracing Harris County, Texas, the county in which Plaintiff's state court Petition was filed, and is pending, and the Houston Division

is the proper venue for removal of state court actions pending in Harris County. *See* 28 U.S.C. § 124(b)(2).

7. As required by 28 U.S.C. §1446(d), WellCare, the removing party, hereby promptly gives all parties written notice of the filing of this Notice of Removal, and files a copy of this Notice of Removal with the Clerk of the 295th Judicial District Court of Harris County, Texas, where the action is currently pending.

### NATURE OF ACTION AND PROCEDURAL BACKGROUND

8. On April 18, 2018, Plaintiff filed its Petition in state court. The Petition identifies INET as "an independent physician practice association ('IPA')," and provides further that "IPAs are networks of physicians created to facilitate cooperation with health insurance companies and the federal government through the Centers for Medicare and Medicaid Services ('CMS'), part of the U.S. Department of Health and Human Services[.]" Ex. A-1, Pet., at ¶ 8.

9. WellCare is a Medicare Advantage Organization that administers benefits under the Medicare Act to Medicare beneficiaries that elect to enroll in its Medicare Advantage plans. **Exhibit B**, Declaration of Erin Page, at ¶¶ 3-5. WellCare has contracted with CMS to administer Medicare benefits, on behalf of the federal government, through its Medicare Advantage plans. *Id.* WellCare then entered into an agreement with INET for its contracted providers to provide treatment to members of WellCare's Medicare Advantage plans. *Id.* at ¶ 7.

10. On or about February 27, 2018, WellCare provided INET with written notice of termination of the WellCare-INET Agreement. Ex. A-1, Pet., at ¶ 21. By its own terms, however, the WellCare-INET Agreement is still in effect and will terminate on June 30, 2018 after the expiration of the 120-day notice period provided by WellCare. Ex. B at ¶ 8. Subsequently, WellCare received concerning information that INET and several of INET's physicians were

contacting WellCare's Medicare members to sell them on another Medicare Advantage plan in violation of CMS guidelines (as well as the WellCare-INET agreement). *Id.* at ¶ 10.  Pursuant to CMS' Medicare Marketing Guidelines, which WellCare is bound to follow, plans like WellCare "may not allow contracted providers to," among other things, "[m]ake phone calls or direct, urge or attempt to persuade beneficiaries to enroll in a specific plan based on financial or other interests of the provider[.]" CMS, Medicare Marking Guidelines, § 70.5.1[1]; *see also* 42 CFR § 422.2268(e) and (j).  Acting pursuant to CMS rules, WellCare sent INET and the offending providers letters urging them to stop violating these rules.  Ex. B at ¶ 11; *see also id.* at Ex. 1 (letters quoting CMS guidelines).  As stated in the Petition, INET agrees that "[u]nder CMS regulations (as well as the WellCare contract itself), INET was required to not interfere with any patient enrollment upon WellCare's termination of the contract." Ex. A-1, Pet., at ¶ 22.

11.  INET's Petition alleges that by sending these cease-and-desist letters to individual providers, WellCare engaged in tortious interference and unfair competition.  Ex. A-1, Pet., at ¶¶ 24-38.  The Petition further seeks to enjoin WellCare from 1) "improperly soliciting, attempting to solicit, influencing, or attempting to influence any and all of the physicians that comprise INET's physician network," and 2) "making any disparaging remarks about INET or its employees, members, managers, or affiliates in public or to any of INET's physician members or their patients." *Id.* at ¶¶ 63(c)-(d).

12.  Based on these allegations, on April 18, 2018 (the very same day its Petition was filed and with WellCare having an hour's notice), INET obtained a temporary restraining order ("TRO") precluding WellCare "from contacting physicians in INET's IPA network[,]" except "within the ordinary course and scope of business." Ex. A-1, TRO, at 1.  By its own terms, the

---

[1] The Medicare Marketing Guidelines are *available at* https://www.cms.gov/Medicare/Health-Plans/ManagedCareMarketing/Downloads/CY-2018-Medicare-Marketing-Guidelines_Final072017.pdf

**NOTICE OF REMOVAL** 4

TRO "shall expire exactly fourteen (14) days from the date and hour of its signing" unless otherwise extended. *Id.* at 2.

13. As discussed below, this Court has jurisdiction under the Federal Officer Statute because INET's Petition alleged that WellCare acted improperly with respect to the letters that it sent in its capacity as a Medicare Advantage Organization following the direction provided by CMS. WellCare has the federal defense that it was complying with governing federal rules at the time that it sent the letters. Further, INET's requested injunction could impede WellCare from complying with its obligations as a Medicare Advantage Organization, including requiring contracted providers to comply with Medicare rules, ensuring that members of its Medicare Advantage plans have an adequate number of contracted providers from which to seek treatment and notifying those members whose providers have terminated of the termination in a timely fashion so that they may seek treatment from a different contracted provider of their choice.

14. WellCare also has federal defenses that INET's state law claims are preempted by the express preemption provision in the Medicare Act because it is seeking to impose state law standards on a Medicare Advantage organization governed by federal law and are preempted by the doctrine of conflict preemption.

## ARGUMENT

**I. This Action is Removable under the Federal Officer Statute.**

    **A.    The Federal Officer Statute Is a Broad Removal Statute.**

15. The Federal Officer Statute permits removal of any action against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

**NOTICE OF REMOVAL**  5

28 U.S.C. § 1442(a)(1).

16. "The purpose of the removal statute is to prevent federal officers or persons acting under their direction from being tried in state courts for acts done within the scope of their federal employment." *Peterson v. Blue Cross/Blue Shield*, 508 F.2d 55, 58 (5th Cir. 1975). The U.S. Supreme Court has fashioned "a broad application of the statute[.]" *Id.* (citing *Willingham v. Morgan,* 395 U.S. 402, 405 (1969)). The statute "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California*, 489 U.S. 121, 136–37 (1989) (citation omitted).

17. The Supreme Court has consistently emphasized that "[t]he federal officer statute is **not** 'narrow' or 'limited,'" *Willingham,* 395 U.S. at 406 (emphasis added), and it has "rejected a 'narrow, grudging interpretation'" of that statute. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). Instead, the statute "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris Co.*, 551 U.S. 142, 147 (2007). Courts within the Fifth Circuit continue to conclude that "the 'acting under' requirement in 28 U.S.C. § 1442(a)(1) is broad and should be liberally construed." *Beaumont Foot Specialists, Inc. v. United Healthcare of Tex., Inc.*, No. 1:15-cv-216, 2015 U.S. Dist. LEXIS 170755, at *10 (E.D. Tex. Dec. 14, 2015) (citing *Watson*, 551 U.S. at 147). This liberal interpretation is consistent with the statute's purpose, which is "to prevent federal officers or persons acting under their direction from being tried in state courts for acts done within the scope of their federal employment." *Peterson*, 508 F.2d at 58.

18. To remove on the basis of the Federal Officer Statute, a defendant must show:

> (1) the defendant is a 'person' within the meaning of the statute; (2) the defendant acted pursuant to a federal officer's directions, and there is a causal nexus between the defendants' actions under color of federal office and the plaintiff's claims; and (3) the defendant is asserting a 'colorable federal defense' to the plaintiff's claims.

*Beaumont Foot Specialists*, 2015 U.S. Dist. LEXIS 170755, at *6; *see also Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397-400 (5th Cir. 1998).

  **B.**  **WellCare Is A "Person" Under the Federal Officer Statute.**

  19.  The Fifth Circuit has consistently held that corporations are "persons" within the meaning of the Federal Officer Statute. *See, e.g., Winters*, 149 F.3d at 398. As discussed below, WellCare meets each of the remaining elements in light of its role as a Medicare Advantage Organization.

  **C.**  **WellCare Acted Pursuant to CMS's directions, and there is a causal nexus between WellCare's actions under color of federal office and Plaintiff's Claims.**

  20.  Medicare Advantage Organizations administering Medicare Advantage plans are entitled to removal under the Federal Officer Statute because, as courts in the Fifth Circuit and elsewhere have long recognized, "Medicare insurance carriers act under federal direction for purposes of § 1442(a)(1)." *General Surgical Assocs., P.A. v. Humana Health Plan of Tex.*, No. SA-14-CA-31-OLG, 2014 U.S. Dist. LEXIS 189291, at *13 (W.D. Tex. Apr. 21, 2014), *adopted*, 2015 U.S. Dist. LEXIS 181009 (W.D. Tex. Feb. 4, 2015); *see also Peterson*, 508 F.2d at 57; *Beaumont Foot Specialists,* 2015 U.S. Dist. LEXIS 170755, at *8-15; *accord Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388*,* 1391-92 (S.D. Fla. 2014); *Cupp v. Johns,* No. 2:14-cv-02016, 2014 U.S. Dist. LEXIS 30537, at *3 (W.D. Ark. Mar. 10, 2014); *Einhorn v. Careplus Health Plans, Inc.*, 43 F. Supp. 3d 1268, 1270 (S.D. Fla. 2014); *Mann v. Reeder*, No. 1:10-CV-00133-JHM, 2010 U.S. Dist. LEXIS 134821, at *9-12 (W.D. Ky. Dec. 21, 2010).

  21.  WellCare contracts with the federal agency, CMS, to administer Medicare Advantage plans as a Medicare Advantage Organization. Ex. B at ¶¶ 3-5. The Petition admits

that "IPAs are networks of physicians created to facilitate cooperation with health insurance companies and the federal government through the Centers for Medicare and Medicaid Services ("CMS"), part of the U.S. Department of Health and Human Services[.]"  Ex. A-1, Pet., at ¶ 8.

22. Under the Medicare Act, Congress established a federally subsidized health insurance program that is administered by the Secretary of the United States Department of Health and Human Services ("HHS").  *See Heckler v. Ringer*, 466 U.S. 602, 605 (1984).  Medicare beneficiaries may elect to receive their Medicare benefits through Medicare Parts A and B (also known as "Original Medicare fee for service"), or a Medicare Advantage plan pursuant to Medicare Part C. 42 U.S.C. § 1395w-21(a)(1)(A)-(B); 42 U.S.C. §§ 1395w-21(a)(1)(B), 1395w-22 *et seq*.

23. The Secretary of the HHS (the "Secretary") has delegated the responsibility for administering the Medicare program to CMS.  *See generally Internet Only Manuals (IOMs)*, CENTERS FOR MEDICARE & MEDICAID SERVICES, http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs.html (last visited April 27, 2018). For beneficiaries electing to receive coverage under Medicare Part C, CMS delegates the administration of Medicare benefits to Medicare Advantage Organizations contracted with CMS. *See* 42 U.S.C. § 1395w-27.

24. As a Medicare Advantage Organization, WellCare assists the Secretary and CMS in carrying out a basic governmental task—providing federal healthcare benefits to Medicare beneficiaries by, among other things, reimbursing providers for medically necessary services, items and equipment provided to Medicare beneficiaries.  Absent WellCare's contracts with CMS, the federal government would have to perform this task itself.  *See* 42 U.S.C. §§ 1395d, 1395k; 42 C.F.R. § 410.3(a).

25. CMS directs and controls how Medicare Advantage Organizations like WellCare administer Medicare benefits through CMS's contract with the organization, its detailed and comprehensive federal regulatory scheme and regularly-issued guidance by CMS. *Beaumont Foot Specialists,* 2015 U.S. Dist. LEXIS 170755, at *7-9; *see also General Surgical Assocs.*, 2014 U.S. Dist. LEXIS 189291, at *5-7. CMS has also devoted an entire section of the regulations and chapter of the Medicare Managed Care Manual to providing direction to the Medicare Advantage Organization with respect to providers. *See* 42 C.F.R. § 422.200 *et seq.;* Medicare Managed Care Manual, Pub. 100-16, Ch. 6.[2]

26. CMS has established specific federal standards for Medicare Advantage Organizations that are directly applicable to this litigation. CMS Medicare Marketing Guidelines provide, in relevant part, that plans like WellCare "may not allow contracted providers to," among other things, "[m]ake phone calls or direct, urge or attempt to persuade beneficiaries to enroll in a specific plan based on financial or other interests of the provider[.]" CMS, Medicare Marking Guidelines, § 70.5.1. As the Petition concedes, "[u]nder CMS regulations […] INET was required to not interfere with any patient enrollment upon WellCare's termination of the contract." Ex. A-1, Pet., at ¶ 22.

27. WellCare was acting as a Medicare Advantage Organization at the direction of CMS when it sent letters to INET and its physicians demanding that they stop violating federal rules in their efforts to coerce their patients into switching Medicare Advantage plans. Ex. B at ¶¶ 9-11; *id.* at Ex. 1 (quoting CMS guidance). The Petition invokes Texas law to seek to enjoin WellCare from communicating with providers (that are currently contracted to render services to members of WellCare's plans) and informing them that the providers are violating CMS'

---

[2] The entire Medicare Managed Care Manual is available on CMS' website: https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS019326.html.

guidelines in their communications with WellCare's members. Thus, there is a causal nexus between WellCare's actions under color of HHS/CMS and the allegations in the Petition.

28. WellCare's ability to continue to contact and communicate with these contract providers is also essential to WellCare's compliance with network adequacy requirements. WellCare "must ensure access to essential services, in accordance with 42 CFR 417.414, 42 CFR 417.416, 42 CFR 422.112(a)(1)(i) and 42 CFR 422.114(a)(3)(ii)." CMS, Medicare Advantage Network Adequacy Criteria Guidance, § 1.[3] WellCare must, therefore, "provide enrollees healthcare services through a **contracted** network of providers that is consistent with the pattern of care in the network service area[.]" *Id.* (emphasis added). These federal rules generally require that MAOs contract with a certain number of providers within a certain geographic distance from its members. *See generally* CMS, Medicare Advantage Network Adequacy Criteria Guidance. To accomplish this, WellCare must have the ability to communicate directly with providers in order to negotiate and establish contracts. *See, e.g., id.* at § 5 (discussing exception requests for network adequacy criteria and noting valid and invalid rationales for not contracting with providers).

29. As the Petition recognizes, upon the termination of an IPA like INET from WellCare's network, providers have the option to contract directly with WellCare or with an in-network IPA. Ex. A-1, Pet., at ¶ 21. If WellCare were enjoined from contacting these providers to see if they are interested in remaining in-network with WellCare through a direct contract or another IPA relationship, it would impede WellCare's ability to comply with this federal requirement and ensure its members (who are mostly senior citizens) may seek care from an adequate number of contracted providers in their area.

---

[3] The Medicare Advantage Network Adequacy Criteria Guidance is available at https://www.cms.gov/Medicare/Medicare-Advantage/MedicareAdvantageApps/Downloads/MA_Network_Adequacy_Criteria_Guidance_Document_1-10-17.pdf.

**NOTICE OF REMOVAL** 10

30. Further, WellCare is required to notify its members of the termination of a contracted provider at least 30 days before the termination effective date. 42 C.F.R. § 422.111(e). This notification allows the Medicare beneficiaries time to prepare for a potential change in health care providers to avoid interruption in the patient's treatment. In order to determine whether it is required to notify members of a provider's termination, WellCare must first know if the provider will choose to remain in-network or terminate its relationship with WellCare. Thus, WellCare obviously must maintain direct communication with the providers to obtain this information.

31. Thus, WellCare's alleged conduct occurred in the context of WellCare performing its duties at the direction of CMS. Accordingly, there is a causal connection between what WellCare, as a Medicare Advantage Organization, has done under color of CMS and the alleged actions in the Petition. There is also a causal connection between the actions that the Petition seeks to enjoin and what WellCare is required to continue to do to comply with federal law.

### D. WellCare Has Several Colorable Federal Defenses.

32. WellCare has several colorable federal defenses to INET's claims. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to ensure that the validity of the defense will be determined in federal court. […] Instead, the 'defense need only be plausible; its ultimate validity is not to be determined at the time of removal.'" *General Surgical Assocs.*, 2014 U.S. Dist. LEXIS 189291, at *19 (internal citation removed).

#### 1. Express Preemption

33. First, WellCare has the plausible federal defense of the express preemption provision in the Medicare Act. Express preemption has been recognized as a colorable federal defense for purposes of federal officer removal. *General Surgical Assocs.*, 2014 U.S. Dist. LEXIS 189291, at *19; *see also Assocs. Rehab. Recovery, Inc.*, 76 F. Supp. 3d at 1391-92 (noting, in the

context of several preemption-based defenses, that "Defendant has colorable defenses to Plaintiff's claim[.]"); *Mann*, 2010 U.S. Dist. LEXIS 134821, at *11-12 (noting preemption, among other defenses, and finding that "[t]hese defenses are plausible and therefore satisfy the "colorable defense" requirement.").

34. The Medicare Act contains an express preemption provision, the plain language of which "itself suggests Congress intended broad preemption…" *S. Tex. Health Sys. v. Care Improvement Plus of Tex. Ins. Co.*, No. 7:14-CV-912, 2015 U.S. Dist. LEXIS 171381, at *8 (S.D. Tex. Sep. 28, 2015). The express preemption provision states: "The standards established under this part [42 U.S.C. § 1395w-21 *et seq.*] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part." 42 U.S.C. § 1395w-26 (b)(3); *accord* 42 C.F.R. § 422.402. Federal standards under the Medicare Act can preempt not only state statutes and regulations, but also **state law causes of action**. *See, e.g.*, *Do Sung Uhm v. Humana Inc.*, 620 F.3d 1134, 1158 (9th Cir. 2010) (finding that beneficiaries' fraud and state consumer protection claims were preempted by the Medicare Act).

35. Here, both the state law causes of action asserted in the Petition (and the current TRO) are expressly preempted because they seek to impose state standards with respect to a Medicare Advantage organization. INET's state law claims for tortious interference, unfair competition, and injunctive relief[4] seek to impose state common law standards upon a Medicare Advantage plan. Specifically, the Petition seeks to prohibit WellCare's communications with contracted providers. As discussed above, WellCare must communicate with providers in order to satisfy its own obligations under federal law, including ensuring contracted providers comply

---

[4] Count Three of the Petition (Theft of Trade Secrets) is not directed at WellCare.

**NOTICE OF REMOVAL** 12

with CMS's rules, establishing an adequate network of contracted providers and notifying members of any changes to the network status of their treating provider. Accordingly, WellCare has a colorable dispositive federal defense that INET's claims are barred by the express preemption provision.

### 2. Conflict Preemption

36. For similar reasons, WellCare also has a colorable federal defense of conflict preemption. Conflict preemption exists where "it is impossible for a private party to comply with both state and federal law," or "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (internal citations and quotations omitted).

37. Here, the Petition seeks to impose purported state law standards to prohibit WellCare from informing its contracted providers about actions that they may be taking that CMS Medicare Marketing Guidelines forbid. Here, the proposed state standard of preventing WellCare from communicating with providers directly conflicts with (or at a minimum stands as an obstacle to comply with) CMS's requirement that MAOs confirm that their contracted providers comply with CMS's marketing rules. Therefore, WellCare has a colorable dispositive federal defense that INET's claims are barred by the conflict preemption doctrine.

### 3. Compliance with Federal Law

38. Moreover, WellCare has the defense that its actions comply with federal laws, regulations and applicable agency guidance as described above. Regulatory compliance and compliance with relevant standards are recognized as cognizable affirmative defenses in federal court. *See, e.g., Hardy v. Zimmer*, No. 2:16-cv-242-JRG, 2017 U.S. Dist. LEXIS 65430, at *22

**NOTICE OF REMOVAL** 13

(E.D. Tex. Apr. 28, 2017) (denying plaintiff's summary judgment motion as to regulatory compliance and compliance with relevant standards defenses).

39. Here, CMS has established rules that obligate Medicare Advantage plans like WellCare to ensure that contracted providers refrain from, among other things, using their position of trust with patients to market specific Medicare Advantage plans to them. WellCare learned that some of its contracted providers were violating these rules and demanded that they stop the improper behavior. The Petition seeks to prevent WellCare from ensuring its contract providers comply with federal law. Thus, WellCare has the defense that it was complying with these standards in sending the cease and desist letters complained about in the Petition.

40. Accordingly, and for all of the foregoing reasons, this action is properly removed to this Court under the Federal Officer Statute because WellCare was acting as a Medicare Advantage Organization at the direction of CMS while performing the alleged actions in the Petition.

## CONCLUSION

WHEREFORE, Defendant WellCare of Texas, Inc. removes this action from the 295th Judicial District Court of Harris County, Texas to the United States District Court for the Southern District of Texas, Houston Division, so that this Court may assume jurisdiction over the cause as provided by law, and seek any other relief to which they may be justly entitled.

DATED and FILED on April 29, 2018

          Respectfully submitted,

*/s/ Greg R. Wehrer*
**Greg R. Wehrer, Attorney-In-Charge**
Texas Bar No. 24068592
S.D. No. 1037384
6200 Chase Tower
600 Travis Street
Houston, Texas 77002-3000
Telephone: (713) 546-5850
Facsimile: (713) 546-5830
E-Mail: Greg.Wehrer@squirepb.com

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

**Amanda D. Price**
Texas Bar No. 24060935
S.D. No. 1155447
6200 Chase Tower,
600 Travis Street
Houston, Texas 77002
Telephone: (713) 546-5850
Facsimile: (713) 546-5830
E-Mail: Amanda.Price@squirepb.com

          **ATTORNEYS FOR DEFENDANT WELLCARE OF TEXAS, INC.**

**NOTICE OF REMOVAL**   15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel of record via certified mail, return receipt requested and electronic mail on this 29th day of Apil, 2018.

Logan E. Johnson
Varant Yegparian
Schiffer Hicks Johnson, PLLC
700 Louisiana, Suite 1200
Houston, Texas 77002

Michael S. Burg
Law Office of Michael S. Burg
1842 Snake River Road
Katy, Texas 77449

R. Tate Young
Tate Young Law Firm
5005 Woodway Drive, Suite 201
Houston, Texas 77056

*/s/ Greg R. Wehrer*
Greg R. Wehrer