**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **INTEGRANET PHYSICIAN** | § | |
| **RESOURCE, INC. d/b/a** | § | |
| **INTEGRANET HEALTH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **TEXAS INDEPENDENT PROVIDERS,** | § | |
| **LLC; ROBERT VINCENT ROTH;** | § | |
| **CARLOS J. PALACIOS, M.D.; and** | § | |
| **WELLCARE OF TEXAS, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## EXHIBIT A

## INDEX OF MATTERS BEING FILED

As required by Local Rule 81, the following is a list of the documents being filed with the

Notice of Removal in this action.

**Exhibit A:**    Index of Matters Being Filed;

**Exhibit A-1:**    Copies of documents on file in the State court Action, Cause No. 2018-26085
with the Harris County District Clerk including the Docket Sheets, Original
Verified Petition, Application for Temporary Restraining Order, and Application
for Injunctive Relief, Affidavit of Lawrence J. Wedekind, Proposed Temporary
Restraining Order, Temporary Restraining Order signed on April 18, 2018,
Clerk's Certificate of Cash Deposit in Lieu of Injunction Bond Per Order of the
Court, April 19, 2018 Letter to Clerk requesting issuance of Writs and Civil
Process Pick-Up Form.

**Exhibit A-2:**    List of All Counsel of Record;

**Exhibit A-3:**    Federal Civil Cover Sheet.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **INTEGRANET PHYSICIAN** | § | |
| **RESOURCE, INC. d/b/a** | § | |
| **INTEGRANET HEALTH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **TEXAS INDEPENDENT PROVIDERS,** | § | |
| **LLC; ROBERT VINCENT ROTH;** | § | |
| **CARLOS J. PALACIOS, M.D.; and** | § | |
| **WELLCARE OF TEXAS, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

**EXHIBIT A-1**

**STATE COURT ACTION DOCUMENTS**

**HCDistrictclerk.com**     INTEGRANET PHYSICIAN RESOURCE INC (D/B/A        4/27/2018
INTEGRANE vs. TEXAS INDEPENDENT PROVIDERS
LLC

Cause: 201826085      CDI: 7      Court: 295

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 79635932 | Civil Process Pick-Up Form | | 04/20/2018 | 1 |
| 79567863 | Letter to Clerk | | 04/19/2018 | 1 |
| 79544091 | Intergranet Physician Resource Inc dba Integranet Health's Original Verified Petition Application For Temporary Restraining Order And Application For Injunctive Relief | | 04/18/2018 | 16 |
| -> 79544093 | Affidavit | | 04/18/2018 | 1 |
| -> 79544092 | Proposed Temporary Restraining Order | | 04/18/2018 | 9 |
| 79550745 | ORDER SIGNED SETTING HEARING | | 04/18/2018 | 2 |
| | ORDER SETTING BOND SIGNED | | 04/18/2018 | |
| | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | | 04/18/2018 | |
| 79565519 | Clerks certificate of cash deposit in lieu of injunction bond per order of the court | | 04/18/2018 | 1 |

**Harris County Docket Sheet**

# 2018-26085

**COURT:**   295th

**FILED DATE:**  4/18/2018

**CASE TYPE:**   Debt/Contract - Debt/Contract



---

### INTEGRANET PHYSICIAN RESOURCE INC (D/B/A INTEGRANE

Attorney: JOHNSON, LOGAN ENGLISH

### vs.

### TEXAS INDEPENDENT PROVIDERS LLC

---

| Docket Sheet Entries | |
|---|---|
| **Date** | **Comment** |
| 4/18/2018 | STBNX - ORDER SETTING BOND SIGNED |
| 4/18/2018 | CASO - ORDER SIGNED SETTING HEARING |
| 4/18/2018 | TRORX - ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER |

4/18/2018 12:10 PM
Chris Daniel - District Clerk Harris County
Envelope No. 23980633
By: Zuhair Fatany
Filed: 4/18/2018 12:10 PM

## 2018-26085 / Court: 295

CAUSE NO. _____

| | | |
|---|---|---|
| INTEGRANET PHYSICIAN RESOURCE, | § | IN THE DISTRICT COURT |
| INC. d/b/a INTEGRANET HEALTH | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | HARRIS COUNTY, TEXAS |
| | § | |
| TEXAS INDEPENDENT PROVIDERS, | § | |
| LLC, ROBERT VINCENT ROTH, | § | |
| CARLOS J. PALACIOS, M.D., and | § | |
| WELLCARE OF TEXAS, INC. | § | |
| | § | ___ JUDICIAL DISTRICT |
| *Defendants.* | § | |

---

**INTEGRANET PHYSICIAN RESOURCE, INC. d/b/a INTEGRANET HEALTH'S ORIGINAL VERIFIED PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR INJUNCTIVE RELIEF**

---

Plaintiff, IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health ("INET") files this Original Verified Petition and Application for Temporary Restraining Order and for Injunctive Relief ("Petition") and would respectfully show as follows:

**I.    DISCOVERY CONTROL PLAN**

1.    INET intends to conduct discovery under Texas Rule of Civil Procedure 190.4 (Level 3).

**II.    PARTIES**

2.    INET is a Texas corporation with a principal place of business at 1900 North Loop West, Suite 400, Houston TX 77018.

3.    Texas Independent Providers, LLC ("TIP") is a Texas limited liability company with its principal place of business at 16720 Stuebner Airline #222, Spring, TX 77379. It may be

served with process by service on its registered agent, Michael S. Burg at 1842 Snake River Rd., Katy, TX 77449.

4.     Robert Vincent Roth ("Roth") is an individual resident of Texas. He is the Secretary and Director of TIP.  He may be served with process at 17723 Windy Point Dr., Spring, TX 77379 or wherever he may be found.

5.     Carlos J. Palacios, M.D. ("Palacios"), is a Texas licensed physician and the President and Director of TIP.  He may be served with process at his office at 7333 North Freeway, Suite 430, Houston, TX 77076 or wherever he may be found.

6.     WellCare of Texas, Inc. ("WellCare") is a Texas corporation with its principal place of business at 4888 Loop Central Drive, Ste. 300, Houston, TX 77081. It may be served with process by service on its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

## III.     JURISDICTION & VENUE

6.     This Court has subject matter jurisdiction over this action by virtue of the relief sought and because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.     Venue is mandatory in Harris County, Texas under TEX. CIV. PRAC. & REM. CODE §§ 65.023(a) because it is the county in which a defendant is domiciled and/or are head-quartered.

## IV.     FACTUAL BACKGROUND

8.     INET is an independent physician practice association ("IPA") which performs "Population Health Care Management" functions. IPAs are networks of physicians created to facilitate cooperation with health insurance companies and the federal government through the

Centers for Medicare and Medicaid Services ("CMS"), part of the U.S. Department of Health and Human Services, while also reducing the administrative burdens of negotiating payer contracts (i.e., contracts with health plans). Each IPA has its own, unique and proprietary approach to facilitating work with health insurance companies and in facilitating the care given to patients (who are also called "members" or "participants").

9.   This case is about a health insurance company (WellCare) working in tandem with a former INET employee (Roth) and his IPA (TIP), along with its principal owner, director, and officer (Palacios). WellCare, Roth, Palacios and TIP's tortious acts are varied, but are all directed towards inducing INET's physicians to leave INET in favor of another IPA. While there are separate players involved, their tortious acts all align in threatening INET's core mission of facilitating cooperation amongst medical providers to ensure the highest and most efficient level of care for the patient.

10.   Because this matter involves two groups of defendants—Roth, Palacios, and TIP on the one hand, and WellCare on the other—an explanation of each groups' tortious conduct is necessary to illustrate the harm done to INET.

A.  *Vincent Roth and TIP*

11.   Roth worked for INET as its Vice-President of Contracting and Director of Financial Analytics. He held this position until his resignation in 2014, a move motivated by his announced desire to create TIP, a competing IPA.

12.   As V.P. and Director of Financial Analytics, Roth designed financial reports that implemented INET's financial and clinical quality metrics for calculating bonuses to be paid to its physician members.[1] The Physician Bonuses computed by these metrics are the product of several

---

[1] The source of funds for these bonuses are distributions that come from contracted payors—typically insurance companies.

factors including: a) The performance of PCP's ("Primary Care Providers") with Pay For Performance ("P4P") quality measures; b) the number of patients the physician treats; c) the amount of time that physician has treated said patient; and d) different percentages of distribution amounts to the IPA's investors, board, and physician members.

13.     These financial metrics are unique and proprietary to the IPA. They contain specific percentages for the split amongst members, management, and investors; they are not used by other IPAs. Therefore, the bonuses paid to each participating physician differs from one IPA to another. And, it goes without saying that such information is crucial to the long-term success of an IPA— the potential bonuses that can be earned by the physician plays a large role in that physicians decision to participate in one IPA over another.

14.     Critically, Roth has intimate knowledge of INET's metrics by virtue of his previous employment at INET—a role that led him to create the metrics themselves as well as those used by TIP, the competing IPA he formed with Palacios.

15.     Very recently, INET discovered that many of its member-physicians received a marketing packet from TIP. The packet touted the benefits and financial advantages of being a TIP member. It included several documents including: a power point presentation; a draft participation agreement; and a spreadsheet breakdown comparing the potential bonus that could be earned by participating in TIP vs. another entity known as "IPA A" – the latter of which bears many of the calculations or formulas used by INET.

16.     Critically, IPA A's percentage allocations for investor share, management company, and physician-members are identical to those used by INET. This, along with Roth's prior employment at INET and his development of the allocations themselves, illustrate that IPA A is clearly INET.

17.     Problematic in its own right, TIP's breakdown of the potential bonuses that can be earned from IPA A (IntegraNet Health) is simply incorrect. Since Roth fully understands INET's Bonus Formula, his representation of INET's Bonus on a Per Member Per Month ("PMPM")[2] basis is intentionally deceptive. Indeed, TIP's marketing materials indicate that INET's <u>maximum</u> per-member bonus is approximately $15.00 lower than it actually is on average in his example ($25.00 vs. $39.00). In TIP's marketing package example, the IntegraNet actual maximum bonus is $39 PMPM and TIP;'s is only $33 PMPM.  In fact, our most recent potential maximum bonus given to IntegraNet PCPs in April 2018 is $57 PMPM vs the $25 PMPM maximum potential bonus represented by Vince Roth and Dr. Palacios of TIP.  Granted, the total IntegraNet Profit Share in this most recent actual IntegraNet Physician Bonus was higher than the $50 pmpm example given by Vince, but the fact is that IntegraNet's physician bonuses are often significantly above the example given by Vince Roth to IntegraNet PCPs. Therefore, TIP grossly misrepresents its own bonus formula and IntegraNet's Bonus formula and then grossly understates the typical IntegraNet profit share in order to further distort reality. Furthermore, these TIP promotional and soliciting materials are further misleading and deceptive, as they fail to enumerate the many Value-based services that INET offers to its PCPs on a routine basis which TIP is unable to offer.    (i.e., electronic physician portal with up to date patient claims information, quality measure compliance data, and coding information, utilization management, case management, quality nursing, patient outreach services, and coding support, to name a few).

18.     Furthermore, TIP misrepresents its Bonus on a PMPM basis as being 154% better than that of INET.  TIP's Bonus is $33.00 PMPM, not the $63.51 as depicted in its materials.  This,

---

[2] Per Member Per Month is a term of art in the health care field for referring to health plan participants as "members."

again, is not just a mistake but is a calculated ploy designed to be deceptive in order to convince INET's PCP's to switch their affiliation away from INET.

19. Taken together, the gross understatement of IntegraNet's Bonus formula and the gross overstatement of TIP's Bonus formula and the omission of any mention of the services provided by INET which are not provided by TIP renders the TIP marketing packet misleading, deceptive, and outright false. This misleading comparison of TIP and INET is intended to drive physicians away from INET and towards TIP. Roth and TIP's tortious conduct must therefore be enjoined before INET suffers any further harm.

20. Palacios is a Director and President of TIP and, therefore, has knowledge of and has condoned Roth and TIP's tortious acts. Furthermore, Palacios has personally contacted many of INET's PCPs in an effort to divert them away from INET. Finally, and most importantly, Palacios is a Medical Director of WellCare's, and this position does a great deal in explaining the concerted acts of all defendants.

### B. *WellCare*

21. Roth, Palacios, and TIP are not the only actors tortiously interfering with INET's business. WellCare and INET had a contractual relationship which WellCare terminated without cause effective June 30, 2018 (WellCare communicated its termination on February 27, 2018). WellCare's termination of IntegraNet Health also caused a simultaneous termination of each of IntegraNet's PCPs. This termination event triggered one of three options for INET's physicians who had been treating patients insured by WellCare: a) terminate their relationship with INET for Wellcare and move to another IPA which had a contract with WellCare; b) contract directly with WellCare; or c) maintain loyalty to IntegraNet contracted Health Plans and tell their affected patients to obtain coverage with another insurer in order to retain their affected PCP. Under options

a) and b), the patient would remain with WellCare—thus, having the physician move to another IPA or choose to contract directly with WellCare would inure to the insurer's benefit. Under Option c), the patient would change to another Health Plan represented by the PCP.

22.     Under CMS regulations (as well as the WellCare contract itself), INET was required to not interfere with any patient enrollment upon WellCare's termination of the contract. INET observed this requirement and has not improperly communicated with or otherwise attempted to influence any WellCare enrollee from switching health plans.

23.     Despite INET observing these restrictions, WellCare nevertheless sent it a cease and desist letter, incorrectly alleging that INET had been acting improperly. If WellCare's actions were limited to this factually-incorrect letter sent to INET, there would be no issue. However, that is not the case.

24.     On or about April 10, 2018, Doctors Donald Hearn, Jaime Duarte, Oscar DeValle, Gina Galindo, Clyde McMorris, and Sonia Moncayo received the same cease-and-desist letter WellCare had sent to INET. These letters indicated that WellCare had "received a complaint relating to unsolicited contacts with one or more of "each doctors" patients. No information is provided on which patients complained, when the complaints were made, how they were made, to whom at WellCare they were made, or any other information that would provide context as to the complaint itself. Curiously, several of these letters were sent to doctors who also occupy medical directorships with INET. And while they are signed on the letterhead of an in-house WellCare attorney located in Tampa, Florida, several of these letters appear to have been transmitted via UPS from or near WellCare's office in Bellaire, Texas.

25.     There is absolutely no good cause for WellCare's actions. WellCare's allegations concern INET and INET alone; sending the cease-and-desist letter to INET's physician members

interferes with INET's business by suggesting that the physician his-or-herself is exposed to potential liability. Seen from this light, WellCare's thinly-veiled threats to INET's physician membership is motivated by the desire to have those physicians leave INET for another IPA or to directly contract with WellCare.

26.    Having acted tortiously on their own, the timing of Roth, Palacios, TIP, and WellCare's actions strongly suggests that they are acting in concert. Indeed, the termination of the WellCare contract created an opening for Roth, Palacios, and TIP to improperly attempt to pry physicians away from INET. And for WellCare, Roth, Palacios, and TIP provide a convenient vehicle through which they can attempt to maintain enrollees despite having terminated the INET contract. The timing of these acts strongly supports the existence of a conspiracy against INET. In any event, they have forced INET to file this suit and seek a TRO against the defendants' tortious conduct.

## V. CAUSES OF ACTION

### COUNT ONE: TORTIOUS INTERFERENCE WITH CONTRACT (ALL DEFENDANTS)

27.    INET incorporates by reference the preceding paragraphs of this Petition.

28.    INET has valid existing contracts with physicians who enroll in and are members of its IPA network.

29.    Roth, TIP, Palacios, and WellCare willfully and intentionally interfered with these contracts between INET and its clients, willfully and intentionally inducing or soliciting them to breach their agreements with or to disenroll or move away from INET. Specifically, Roth, Palacios, and TIP have solicited several of INET's physicians to disenroll from INET and enroll in TIP's IPA network. WellCare has contributed to this interference by improperly sending a cease-and-desist letter directed to INET to several of its physician members. WellCare has thus

improperly indicated to those physicians that they face potential legal exposure and therefore encourages them to leave INET for another IPA, like TIP.   Further, it is highly likely that WellCare, having intimate confidential knowledge of the names and identities of all INET's PCP's who had been treating WellCare members, provided that list indiscriminately to a number of INET's IPA competitors to encourage a barrage of solicitations by those competitors, including TIP – with a view to taking business away from INET and harming it.

30.    INET is just beginning to discover the full extent of Roth, Palacios, TIP, and WellCare's interference in its business. It is anticipated that discovery will show the full extent of Defendants' tortious interference with INET's existing network of physicians.

31.    Roth, Palacios, TIP, and WellCare's interference is not privileged or justified. As a result of its interference with INET's physician network, INET suffered actual and irreparable damages including, among other things, loss of goodwill, damage to its reputation, and other pecuniary loss. Based on this unlawful interference, INET is entitled to all actual damages proximately caused by all acts of such interference. Additionally, INET is entitled to exemplary damages because Roth, Palacios, TIP, and WellCare's acts of interference were malicious.

32.    Roth, Palacios, TIP, and WellCare will continue their interference with INET's network, which will irreparably injure INET, unless this Court enjoins their improper activities. Therefore, INET is entitled to injunctive relief to prevent this tortious interference in the future.

## COUNT TWO: UNFAIR COMPETITION (ALL DEFENDANTS)

33.    INET incorporates by reference the preceding paragraphs of this Petition.

34.    Roth, Palacios, TIP, and WellCare engaged in business conduct that is contrary to honest practice in commercial matters. Their actions are both illegal and tortious.

35.     Roth, Palacios, TIP, and WellCare's illegal and tortious acts have interfered with INET's ability to conduct its business.

36.     As a direct result of their acts of unfair competition, Roth, Palacios, TIP, and WellCare have and will continue to benefit from their wrongful acts.

37.     As a direct result of their unfair competition, Roth, Palacios, TIP, and WellCare have damaged and will continue to damage INET in an amount that is not presently ascertainable, but is in excess of this Court's minimum jurisdictional limits.

38.     Roth, Palacios, TIP, and WellCare will continue their acts of unfair competition, which will irreparably injure INET, unless this Court enjoins their improper activities. As such, INET is entitled to all damages caused by Roth, Palacios, TIP, and WellCare's unfair competition, exemplary damages, and injunctive relief to prevent this unfair competition in the future.

## COUNT THREE: THEFT OF TRADE SECRETS (ROTH, PALACIOS, AND TIP ONLY)

39.     INET incorporates by reference the preceding paragraphs of this Petition.

40.     This cause of action is brought pursuant to the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A.001 et seq.

41.     INET invested substantial time, money, effort, and resources over many years in developing its information regarding its physician members, the performance metrics of those physicians, and the allocation formula used in calculating bonuses paid to these physicians ("Confidential Information"). Only INET and those to whom INET discloses the Confidential Information to, in confidence, have knowledge of this information. Nor is the Confidential Information a matter of public knowledge or generally known within the industry.

42.     INET's Confidential Information enabled it to obtain a fair and lawful advantage over those who do not know or have the right to use its Confidential Information.

43.    Roth, Palacios, and TIP acquired INET's Confidential Information through Roth's employment with INET.

44.    Roth used or disclosed or threatened to use or disclose INET's Confidential Information for Roth, Palacios, and TIP's financial gain. This use and disclosure, without license or authority, is a misappropriation of INET's Confidential Information under the Texas Uniform Trade Secrets Act. Roth, Palacios, and TIP are well aware that this information is and was to remain confidential.

45.    Because Roth, Palacios, and TIP understand the importance of INET's Confidential Information, and they used or disclosed, or threatened to use or disclose it to benefit themselves, their misappropriation is willful and intentional. Therefore, INET is entitled to all actual and exemplary damages resulting from Roth, Palacios, and TIP's misappropriation and breach of the Texas Uniform Trade Secrets Act.

46.    Roth, Palacios, and TIP's wrongful use or disclosure of the Confidential Information has, and will continue to, seriously damage INET in an amount that is not presently ascertainable, but is in excess of the Court's minimum jurisdictional limit.

47.    Because Roth, Palacios, and TIP will continue their acts of misappropriation or threatened misappropriation of INET's Confidential Information, causing irreparable harm, INET requests that the Court enjoin their improper activities.

## VI.    DAMAGES

48.    INET incorporates by reference the preceding paragraphs of this Petition.

49.    Roth, Palacios, TIP and WellCare's actions have caused INET significant economic harm. Accordingly, INET requests all actual damages resulting from, or proximately caused by all Defendants' actions as described in this Petition. INET also requests all consequential, out-of-

pocket or reliance, lost profits, restitution, goodwill or business reputation, and loss-of-use damages. INET also requests pre-judgment and post-judgment interest on any award of damages along with its costs of court.

50.   Roth, Palacios, TIP and WellCare's conduct has been intentional, malicious, and willful, entitling INET to an award of exemplary damages.

**VII.   ATTORNEY'S FEES**

51.   INET incorporates by reference the preceding paragraphs of this Petition.

52.   INET is entitled to recovery of its reasonable and necessary attorney's fees and costs pursuant to TEX. CIV. PRAC. & REM. CODE §§ 134A.001 et seq.

**VIII.   JURY DEMAND**

53.   INET incorporates by reference the preceding paragraphs of this Petition.

54.   In accordance with Texas Rule of Civil Procedure 216, INET makes application for a jury trial and requests that, after resolution of its request for Temporary Restraining Order and any other injunctive relief, this cause be set on the Court's jury docket. In support of its application, the appropriate jury fee will be paid at least thirty days in advance of the trial setting.

**IX.   CONDITIONS PRECEDENT**

55.   All conditions precedent, if any, to the claims or causes of action alleged herein have been met, waived or excused.

**X.   APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF.**

56.   INET incorporates by reference the preceding paragraphs of this Petition.

57.   Based on the foregoing, INET has shown a probable right to recovery. In addition, INET has no adequate remedy at law for TIP, Roth, Palacios, and WellCare's actions. Unless TIP, Roth, Palacios, and WellCare are enjoined, INET will continue to suffer clear, immediate, and

irreparable injury by TIP, Roth, Palacios, and WellCare's: (1) continued misappropriation and use of INET's Confidential Information; (2) continued tortious interference with INET's contracts; and (3) continued unfair competition.

58.   INET has suffered and will continue to suffer irreparable harm from TIP and WellCare's unlawful and tortious conduct. As a direct and proximate cause of TIP and WellCare's conduct, INET has lost and will continue to lose: (1) its Confidential Information; (2) goodwill; (3) the benefit of Roth's obligations to not use, disclose, or otherwise appropriate INET's Confidential Information; and (4) the benefit of its current relationships with the physicians that comprise its IPA network. TIP, Roth, Palacios, and WellCare's conduct has caused and will continue to cause INET to suffer reputational harm as TIP, Roth, Palacios, and WellCare continue to tortuously interfere with its business. Therefore, money damages alone cannot adequately compensate INET.

59.   Further, greater injury will be inflicted upon INET by the denial of injunctive relief than would be inflicted upon TIP, Roth, Palacios, and WellCare by the granting of such relief. By granting injunctive relief, TIP, Roth, Palacios, and WellCare will be required to abide by their common law and statutory obligations.

60.   The issuance of injunctive relief will not disserve the public interest. Balancing the equities and other factors, the significant potential of irreparable harm to INET without injunctive relief, and the lack of harm due to the entry of injunctive relief demonstrate that the relief will not disserve the public interest.

61.   Additionally, INET notified Vincent Roth—and by virtue, TIP—of the importance of INET's Confidential Information and the need to keep such information strictly confidential.

Roth agreed to do so by voluntarily signing a letter upon his departure from INET where he indicated that he would not actively pursue INET's providers.

62. In conjunction with any hearing on INET's application for a temporary restraining order, the undersigned counsel will provide notice to TIP, Roth, Palacios, and WellCare of this Petition and of INET's request for a temporary restraining order, temporary injunction, and permanent injunction.

63. Pending the final determination of this action on the merits, INET requests that the Court enter a temporary restraining order as follows:

a. Roth, Palacios, and TIP, and anyone or any entity acting by, through, or in concert with any of these persons/entities must refrain from directly or indirectly, in any manner:

    i. Disclosing, transmitting, relying upon, appropriating, or otherwise using for any purpose, whatsoever:

        1. INET's Confidential Information including, without limitation, information concerning

            a. The percentage of allocations for investor share, management company, and physician-members used by INET.
            b. Any representation of distribution of monies and the formulas used to determine those distributions to the physician members of INET.
            c. Any representation of or mention of INET methodologies or practice in the way it conducts business with its physician members.

        2. Any other trade secrets or confidential or proprietary information belonging to INET that Roth, Palacios, and TIP have access to or is otherwise in their possession, custody, or control.

        3. Any information that that Roth, Palacios, and TIP accessed, copied, printed, imaged, exported, downloaded, obtained or otherwise removed from INET including but not limited to its

            a. Policies and procedures.
            b. Contract language specific to INET

      c.  Physician rosters, locations, contact data

      d.  Physician performance reports

      e.  Financial information

ii. Retaining or otherwise maintaining possession, custody, or control of INET's Confidential Information or other property belonging to INET, whether in documentary, electronic, or any other format.

b. That within 3 days of entry of the temporary restraining order, Roth, Palacios, and TIP must return all of INET's property, including its Confidential Information, to INET or indicate in writing that they no longer have any possession, custody, or control over any of INET's Confidential Information.

c. That Roth, Palacios, TIP, and WellCare must refrain from improperly soliciting, attempting to solicit, influencing, or attempting to influence any and all of the physicians that comprise INET's physician network; and

d. That Roth, Palacios, TIP, and WellCare must refrain from making any disparaging remarks about INET or its employees, members, managers, or affiliates in public or to any of INET's physician members or their patients.

64.    INET further seeks leave to conduct expedited discovery and orders Roth, Palacios, TIP, and WellCare to submit to an oral deposition

65.    INET further requests that, after notice and a hearing, the Court issue a temporary injunction granting the same relief as requested in Paragraph 63(a)-(d).

66.    INET further requests that, after notice and a hearing, the Court issue a permanent injunction granting the same relief as requested in Paragraph 63(a)-(d).

## **PRAYER FOR RELIEF**

INET respectfully requests that the Court:

(a) Issue a temporary restraining order, as outlined in Paragraph 63 of this Petition, enjoining all defendants from further breaches or attempted breaches of their common law and statutory duties and obligations to INET;

(b) Order expedited discovery as outlined in Paragraph 64;

(c) Issue, after a hearing, a temporary injunction, as requested in Paragraph 65, pending a trial on the merits;

(d) Issue, after a trial on the merits, a permanent injunction, as in Paragraph 66INET;

(e) Award INET its attorneys' fees, court costs, and expenses; and

(f) Award INET all actual, consequential, and exemplary damages, prejudgment and post-judgment interest; and all other relief to which it may be entitled.

Respectfully submitted,

*/s/ Logan E. Johnson*

Logan E. Johnson
State Bar No. 24014855
Varant Yegparian
State Bar No. 24070893

SCHIFFER HICKS JOHNSON, PLLC
700 Louisiana, Suite 1200
Houston, Texas 77002
Tel:  713-357-5150
Fax:  713-357-5160
*ljohnson@shjlawfirm.com*
*vyegparian@shjlawfirm.com*

**ATTORNEYS FOR INTEGRANET
PHYSICIAN RESOURCE, INC.**

**CERTIFICATE OF SERVICE**

This is to certify that counsel notified or attempted to notify each of the defendants listed above prior to the commencement of any oral hearing on the application for a temporary restraining order.

*/s/ Logan E. Johnson*
Logan E. Johnson

4/18/2018 12:10:28 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 23980633
By: FATANY, ZUHAIR M
Filed: 4/18/2018 12:10:28 PM

**2018-26085 / Court: 295**

CAUSE NO. _____

| | | |
|---|---|---|
| INTEGRANET PHYSICIAN RESOURCE, INC. d/b/a INTEGRANET HEALTH | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TEXAS INDEPENDENT PROVIDERS, LLC, | § | |
| ROBERT VINCENT ROTH, CARLOS J. | § | |
| PALACIOS, M.D., and WELLCARE OF | § | |
| TEXAS, INC. | § | |
| | § | ___ JUDICIAL DISTRICT |
| *Defendants.* | | |

## AFFIDAVIT

| | |
|---|---|
| COUNTY OF HARRIS | § |
| | § |
| STATE OF TEXAS | § |

1. My name is Lawrence J. Wedekind. I am more than twenty-one years of age and am competent to testify. I am Chief Executive Officer of IntegraNet Physician Resource, Inc., d/b/a IntegraNet Health ("INET").

2. In connection with my duties as INET's CEO, I have developed knowledge of the statements and facts contained in INET's Verified Original Petition, Application for Temporary Restraining Order and Application for Injunctive Relief ("Petition").

3. Through the course and scope of my role as INET's CEO, I have obtained personal knowledge of the statements and facts contained in INET's Petition and they are true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

_____
LAWRENCE J. WEDEKIND

**SUBSCRIBED AND SWORN TO** before me by the above-named Affiant this 18th day of April 2018 to certify which witness my hand and seal of office.

ELIZABETH LITTLEJOHN
Notary Public, State of Texas
Comm. Expires 05-18-2021
Notary ID 128208606

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

4/18/2018 12:10:28 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 23980633
By: FATANY, ZUHAIR M
Filed: 4/18/2018 12:10:28 PM

## 2018-26085 / Court: 295

CAUSE NO. _____

| | | |
|---|---|---|
| INTEGRANET PHYSICIAN RESOURCE, INC. d/b/a INTEGRANET HEALTH | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| *v.* | § § | HARRIS COUNTY, TEXAS |
| TEXAS INDEPENDENT PROVIDERS, LLC; ROBERT VINCENT ROTH; CARLOS J. PALACIOUS, M.D.; and WELLCARE OF TEXAS, INC. | § § § § § § | |
| *Defendants.* | § | \_\_\_ JUDICIAL DISTRICT |

---

**TEMPORARY RESTRAINING ORDER**

---

ON THIS DAY, all legal prerequisites having been complied with, the Court heard Plaintiff IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health's ("INET") Application for Temporary Restraining Order against Defendants Texas Independent Providers ("TIP"), Robert Vincent Roth, Carlos J. Palacios, M.D., and WellCare of Texas, Inc. ("Defendants").

INET appeared by and through its counsel, Varant Yegparian. Notice was given to Defendants in connection with INET filing its Original Verified Petition, Application for Temporary Restraining Order, and Application for Injunctive Relief ("Petition").

INET is threatened with immediate and irreparable injury unless this Court immediately issues this Temporary Restraining Order on the terms set forth below. Based on this Court's review of INET's Petition, supporting verification, and the arguments of counsel, this Court concludes that it is substantially likely that INET is entitled to, and the status quo is best maintained by, a temporary restraining order on the terms set forth below.

Therefore, having reviewed all of the materials referenced above and the arguments of counsel, this Court finds that this evidence establishes the elements necessary for issuance of a

temporary restraining order. Accordingly, this Court finds that INET will suffer immediate and irreparable injury for which there is no adequate remedy at law if the status quo is not preserved.

Specifically, INET's injuries would be irreparable and all remedies at law would be inadequate because there is a substantial likelihood that Defendants have violated and will continue to violate violate Texas statutory and common law (namely, theft of trade secrets/misappropriation of trade secrets/violation of the Texas Uniform Trade Secrets Act, tortious interference with contract, unfair competition,) by, among other things, tortuously interfering with INET's current and prospective contracts and business, unfairly competing with INET, soliciting INET's physicians, and misappropriating INET's proprietary, confidential, and trade secret information ("Confidential Information") before INET's claims can be finally adjudicated. INET's Confidential Information includes without limitation commercial and operational information that is proprietary and confidential and not generally known to the public.

INET is an independent physician practice association ("IPA") which performs "Population Health Care Management" functions. Each IPA has its own, unique and proprietary approach to facilitating work with insurance companies and in facilitating the care given to patients (who are also called "members" or "participants").

INET alleges that Roth formerly worked as its Vice-President of Contracting and Director of Financial Analytics. He held this position until his resignation in 2014, a move motivated by his announced desire to create TIP, a competing IPA. As V.P and Director of Financial Analytics, INET alleges Roth designed financial reports that implemented INET's financial and clinical

quality metrics for calculating bonuses to be paid to its physician members.[1] The Physician Bonuses computed by these metrics are the product of several factors including: a) The performance of PCP's ("Primary Care Providers") of Pay For Performance ("P4P") quality measures; b) the number of patients the physician treats; c) the amount of time that physician has treated said patient; and d) different percentages of distribution amounts to the IPA's investors, board, and physician members. These financial metrics are unique and proprietary to the IPA. They contain specific percentages for the split amongst members, management, and investors; they are not used by other IPAs. Therefore, the bonuses paid to each participating physician differs from one IPA to another. INET alleges that such information is crucial to the long-term success of an IPA—the potential bonuses that can be earned by the physician plays a large role in that physicians decision to participate in one IPA over another. By virtue of his role with INET, Roth is alleged to have intimate knowledge of INET's metrics.

INET also alleges that it discovered that many of its member-physicians received a marketing packet from TIP. The packet touted the benefits and financial advantages of being a TIP member. It included several documents including: a power point presentation; a draft participation agreement; and a spreadsheet breakdown comparing the potential bonus that could be earned by participating in TIP vs. another entity known as "IPA A" – the latter of which bears many of the calculations or formulas used by INET. The calculations and financial metrics attributable to both TIP and INET (via "IPA A") are alleged to be incorrect, misleading, and deceptive.

---

[1] The source of funds for these bonuses are distributions that come from contracted payors—typically insurance companies.

INET further alleges that Palacios is a Director and President of TIP and, therefore, has knowledge of and has condoned Roth and TIP's tortious acts. Furthermore, Palacios is alleged to have personally contacted many of INET's PCPs in an effort to diver them away from INET.

Furthermore, WellCare and INET had a contractual relationship which WellCare terminated without cause effective June 30, 2018 (WellCare communicated its termination on February 27, 2018). WellCare's termination triggered one of three options for INET's physicians who had been treating patients insured by WellCare: a) terminate their relationship with INET and move to another IPA which had a contract with WellCare; b) contract directly with WellCare; or c) tell their affected patients to obtain coverage with another insurer. Under options a) and b), the patient would remain with WellCare—requiring the physician move to another IPA or choose to contract directly with WellCare would inure to the insurer's benefit.

Under CMS regulations (as well as the WellCare contract itself), INET was required to not interfere with any patient enrollment upon WellCare's termination of the contract. INET observed this requirement and has not improperly communicated with or otherwise attempted to influence any WellCare enrollee from switching health plans.

Despite INET observing these restrictions, INET alleges that WellCare nevertheless sent it a cease and desist letter, incorrectly alleging that INET had been acting improperly. Moreover, INET alleges that on or about April 10, 2018, Doctors Donald Hearn, Jaime Duarte, Oscar DeValle, Gina Galindo, Clyde McMorris, and Sonia Moncayo received the same cease-and-desist letter WellCare had sent to INET. These letters indicated that WellCare had "received a complaint relating to unsolicited contacts with one or more of "each doctors" patients. INET alleges that

WellCare's distribution of these letters is intended to induce its physician members to leave INET under threat of potential legal exposure.

Based on the foregoing, INET has shown a probable right to recovery. In addition, INET has no adequate remedy at law for TIP, Roth, Palacios, and WellCare's actions. Unless TIP, Roth, Palacios, and WellCare are enjoined, INET will continue to suffer clear, immediate, and irreparable injury by TIP, Roth, Palacios, and WellCare's: (1) continued misappropriation and use of INET's Confidential Information; (2) continued tortious interference with INET's contracts; and (3) continued unfair competition.

Moreover, INET has suffered and will continue to suffer irreparable harm from TIP, Roth, Palacios, and WellCare's unlawful and tortious conduct. As a direct and proximate cause of TIP and WellCare's conduct, INET has lost and will continue to lose: (1) its Confidential Information; (2) goodwill; (3) the benefit of Roth's obligations to not use, disclose, or otherwise appropriate INET's Confidential Information; and (4) the benefit of its current relationships with the physicians that comprise its IPA network. TIP, Roth, Palacios, and WellCare's conduct has caused and will continue to cause INET to suffer reputational harm as TIP, Roth, Palacios, and WellCare continue to tortuously interfere with its business. Therefore, money damages alone cannot adequately compensate INET.

Further, greater injury will be inflicted upon INET by the denial of injunctive relief than would be inflicted upon TIP, Roth, Palacios, and WellCare by the granting of such relief. By granting injunctive relief, TIP, Roth, Palacios, and WellCare will be required to abide by their common law and statutory obligations.

The issuance of injunctive relief will not disserve the public interest. Balancing the equities and other factors, the significant potential of irreparable harm to INET without injunctive relief, and the lack of harm due to the entry of injunctive relief demonstrate that the relief will not disserve the public interest.

Accordingly, it is substantially likely that Defendants did, in fact, violate their common law and statutory obligations to INET and that, unless enjoined, INET will continue to suffer probable, immediate, and irrepeable injury by: (1) Defendants' theft of INET's trade secrets/misappropriation of trade secrets/violation of the Texas Uniform Trade Secrets Act; (2) Defendants' tortious interference with INET's current contracts and business relatinships; and (3) Defendants' unfair competition.

Based on the foregoing findings, this Court finds that it should GRANT INET's Application for Temporary Restraining Order against Defendants.

THEREFORE IT IS ORDERED THAT:

Pending the final determination of this action on the merits, INET requests that the Court enter a temporary restraining order as follows:

  a. Roth, Palacios, and TIP, and anyone or any entity acting by, through, or in concert with any of these persons/entities must refrain from directly or indirectly, in any manner:

    i. Disclosing, transmitting, relying upon, appropriating, or otherwise using for any purpose, whatsoever:

        1. INET's Confidential Information including, without limitation, information concerning

            a. The percentage of allocations for investor share, management company, and physician-members used by INET.

      b. Any representation of distribution of monies and the formulas used to determine those distributions to the physician members of INET.

      c. Any representation of or mention of INET methodologies or practice in the way it conducts business with its physician members.

    2. Any other trade secrets or confidential or proprietary information belonging to INET that Roth and TIP have access to or is otherwise in their possession, custody, or control.

    3. Any information that that Roth, Palacios, and TIP accessed, copied, printed, imaged, exported, downloaded, obtained or otherwise removed from INET including but not limited to its

      a. Policies and procedures.
      b. Contract language specific to INET
      c. Physician rosters, locations, contact data
      d. Physician performance reports
      e. Financial information

  ii. Retaining or otherwise maintaining possession, custody, or control of INET's Confidential Information or other property belonging to INET, whether in documentary, electronic, or any other format.

b. That within 3 days of entry of the temporary restraining order, Roth, Palacios, and TIP must return all of INET's property, including its Confidential Information, to INET or indicate in writing that they no longer have any possession, custody, or control over any of INET's Confidential Information.

c. That Roth, Palacios, TIP, and WellCare must refrain from improperly soliciting, attempting to solicit, influencing, or attempting to influence any and all of the physicians that comprise INET's physician network; and

d. That Roth, Palacios, TIP, and WellCare must refrain from making any disparaging remarks about INET or its employees, members, managers, or affiliates in public or to any of INET's physician members or their patients.

IT IS FURTHER ORDERED that unless terminated sooner, this Temporary Restraining Order shall expire exactly fourteen (14) days from the date and hour of its signing, unless, within the time limit set out above, this Court extends the effectiveness of this Temporary Restraining

---

*TEMPORARY RESTRAINING ORDER*                                    P a g e | 7

Order in compliance with applicable law or it is extended by agreement of the parties. For good cause shown, this Temporary Restraining Order may be extended by fourteen (14) days pursuant to TEX. R. CIV. P. 680.

IT IS FURTHER ORDERED that INET's Application for Temporary Injunction shall be heard before the assigned court on _____ ___, 2018, commencing at ____ _.m., in the courtroom of the assigned district court of Harris County, Texas and that Defendants shall appear and show cause, if any, why the injunctive relief sought by INET should not be granted as requested.

IT IS FURTHER ORDERED that Defendants shall submit to expedited discovery before the temporary injunction hearing. In order to prepare for the temporary injunction hearing, INET may take up to five depositions, including that of each Defendant, on dates and times of INET's choosing, provided that the depositions are at least four days prior to the temporary injunction hearing. Following the entry of this Temporary Restraining Order, INET may serve not more than thirty requests for production, fifty requests for admission, and ten interrogatories on each Defendant with each Defendant's responses and objections due seven days after service of INET's written discovery; Defendants must respond and produce the requested documents via hand delivery (or any other method agreed to by the parties) within the time specified above.

IT IS FURTHER ORDERED that before the clerk issues this Temporary Restraining Order, INET shall execute and file with this Court a bond (or cash in lieu of a bond) in conformity with the law, in the amount of $_____.

IT IS FURTHER ORDERED that the clerk of this Court, after approving the bond executed and filed by INET, shall issue a temporary restraining order in conformity with the law and the terms of this Temporary Restraining Order.

SIGNED this the _____ day of April, 2018, at _____ o'clock ___.m.

_____
JUDGE PRESIDING

P2
TRORX
STBNX
CASO.

CAUSE NO. 2018-26085

| INTEGRANET PHYSICIAN RESOURCE, | § | IN THE DISTRICT COURT |
| INC. d/b/a INTEGRANET HEALTH | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TEXAS INDEPENDENT PROVIDERS, | § | |
| LLC; ROBERT VINCENT ROTH; | § | |
| CARLOS J. PALACIOUS, M.D.; and | § | |
| WELLCARE OF TEXAS, INC. | § | |
| | § | 295th JUDICIAL DISTRICT |
| *Defendants.* | | |



---

## TEMPORARY RESTRAINING ORDER

---

ON THIS DAY, all legal prerequisites having been complied with, the Court heard Plaintiff IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health's ("INET") Application for Temporary Restraining Order against Defendants Texas Independent Providers ("TIP"), Robert Vincent Roth, Carlos J. Palacios, M.D., and WellCare of Texas, Inc. ("Defendants").

After consideration of the application, the response, and the arguments of counsel, if any, the Court is of the opinion that the Application should be GRANTED.

IT IS THEREFORE ORDERED THAT Defendants are restrained from contacting physicians in INET's IPA network. This Order does not restrict WellCare from contacting physicians in INET's IPA network within the ordinary course and scope of business.

IT IS FURTHER ORDERED that unless terminated sooner, this Temporary Restraining

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

Order shall expire exactly fourteen (14) days from the date and hour of its signing, unless, within the time limit set out above, this Court extends the effectiveness of this Temporary Restraining Order in compliance with applicable law or it is extended by agreement of the parties. For good cause shown, this Temporary Restraining Order may be extended by fourteen (14) days pursuant to TEX. R. CIV. P. 680.

IT IS FURTHER ORDERED that INET's Application for Temporary Injunction shall be heard before the assigned court on April 30, 2018, commencing at 11am., in the courtroom of the assigned district court of Harris County, Texas and that Defendants shall appear and show cause, if any, why the injunctive relief sought by INET should not be granted as requested.

IT IS FURTHER ORDERED that before the clerk issues this Temporary Restraining Order, INET shall execute and file with this Court a bond (or cash in lieu of a bond) in conformity with the law, in the amount of $500.

IT IS FURTHER ORDERED that the clerk of this Court, after approving the bond executed and filed by INET, shall issue a temporary restraining order in conformity with the law and the terms of this Temporary Restraining Order.

SIGNED this the 18th day of April, 2018, at 3:4 o'clock _p_.m.

_____
JUDGE PRESIDING

CAUSE NUMBER 2018 - 26085

INTEGRANET PHYSICIAN
RESOURCE INC. d/b/a INTEGRANET HEALTH
§          IN THE DISTRICT COURT OF
**PETITIONER**

§          HARRIS COUNTY, TEXAS

§

VS.

TEXAS INDEPENDANT PROVIDERS LLC; ROBERT
PALACIOS; VINCENT ROTH; CARLOS J. PALACIOS AND §   295th   JUDICIAL DISTRICT
**RESPONDENT**   AND WELLCARE OF
TEXAS

## CLERK'S CERTIFICATE OF CASH DEPOSIT IN LIEU
## OF INJUNCTION BOND PER ORDER OF THE COURT

**THE STATE OF TEXAS §**
**COUNTY OF HARRIS   §**

THIS DOCUMENT IS TO CERTIFY that I, the undersigned Clerk of the District Courts of Harris County, Texas have received a cash deposit, as ordered by the Court, in the amount of   FIVE   HUNDRED   Dollars

($ 500   ), to be deposited with the Registry of the Court in lieu of a Temporary Restraining Order Bond or a Temporary Injunction Bond, as required by Rule 684, T.R.C.P, in the above styled and numbered cause as provided by the order entered on the   18th   day of   April   , 20 18

This cash deposit is made and received in lieu of TEMPORARY RESTRAINING ORDER or TEMPORARY INJUCTION, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part, and this certificate is issued to have the force and effect of a TEMPORARY RESTRAINING ORDER BOND OR A TEMPORARY INJUCTION BOND in accordance with the Order of the Court.

WITNESS my hand and seal of office this   18th   day of   April   A.D., 20 18 .

**FILED**
**Chris Daniel**
**District Clerk** 4-18-18

APR 18 2018

Time: 3:40pm

Harris County, Texas

By P. Dittmer
Deputy

Chris Daniel , District Clerk
Harris County, Texas
Po Box 4651
Houston, Texas 77210-4651

By:
Deputy District Clerk

Principal: _____

Attorney: VARANT YEGPARIAN

Bar Number: 24070893

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

Page 1 of 1

4/19/2018 3:56 PM
Chris Daniel - District Clerk Harris County
Envelope No. 24028176
By: Jacob Blessing
Filed: 4/19/2018 2:51 PM

Logan E. Johnson
700 Louisiana Street
Suite 2650
Houston, Texas 77002
shjlawfirm.com
D: 713.357.5161
T: 713.357.5150
F: 713.357.5160

**Schiffer
Hicks
Johnson
PLLC**

April 19, 2018

**VIA E-FILE**

Clerk of Court
Harris County District Court

Re:     Cause No. 2018-26085; IntegraNet Physician Resource v Texas Independent Providers, et al; In the 295th Judicial District Court, Harris County, Texas.

Dear Clerk:

By way of Efiling this letter, please issue a Writ (Person) to each of the following four Defendants in the above reference matter.  Thank you.

1.   Texas Independent Providers, LLC
2.   Robert Vincent Roth
3.   Carlos J. Palacious, MD
4.   Wellcare of Texas, Inc.

Very truly yours,

Logan E. Johnson



# CHRIS DANIEL

**HARRIS COUNTY DISTRICT CLERK**

## Civil Process Pick-Up Form

**CAUSE NUMBER:** __2018-__ _26085_

**ATY** ✓          **CIV** _____          **COURT** _295_

| REQUESTING ATTORNEY/FIRM NOTIFICATION |
|---|
| *ATTORNEY: _Johnson, Logan_          * PH: _(713)357-5150_ |
| *CIVIL PROCESS SERVER: _____ |
| *PH: ____ _4m    x105/Logan's voicemail_ |
| *PERSON NOTIFIED SVC READY: _Ms. Fitzgerald's voicemail (left detailed message)_ |
| * NOTIFIED BY: REGINA BRINCEFIELD |
| *DATE: ____ _4/20/2018_          _/10:29 AM_ |

| Type of Service Document: _TRO_ | Tracking Number _7348561D_ |
|---|---|
| Type of Service Document: _''_ | Tracking Number _7348 5611_ |
| Type of Service Document: _''_ | Tracking Number _7348 5609_ |
| Type of Service Document: _''_ | Tracking Number _7348 5607_ |
| Type of Service Document: _____ | Tracking Number _____ |
| Type of Service Document: _____ | Tracking Number _____ |
| Type of Service Document: _____ | Tracking Number _____ |

**Process papers prepared by:** REGINA L. BRINCEFIELD

Date: __4__-__20__ 2018          30 days waiting __5__-__19__-2018

| |
|---|
| *Process papers released to: _____ |
| (PRINT NAME) |
| _____ |
| *(CONTACT NUMBER)          (SIGNATURE) |
| *Process papers released by: _____ _299_ |
| (PRINT NAME) |
| _____ |
| (SIGNATURE) |
| * Date: _4-23_ ,2018  Time: _12:05_ AM / PM |

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

**Entire document must be completed**    (do not change this document)   Revised 1/9/2015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **INTEGRANET PHYSICIAN** | § | |
| **RESOURCE, INC. d/b/a** | § | |
| **INTEGRANET HEALTH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **TEXAS INDEPENDENT PROVIDERS,** | § | |
| **LLC; ROBERT VINCENT ROTH;** | § | |
| **CARLOS J. PALACIOS, M.D.; and** | § | |
| **WELLCARE OF TEXAS, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## EXHIBIT A-2

## LIST OF ALL COUNSEL OF RECORD

**Counsel for Plaintiff IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health**

> Logan E. Johnson
> Varant Yegparian
> Schiffer Hicks Johnson, PLLC
> 700 Louisiana, Suite 1200
> Houston, Texas 77002
> Telephone: 713-357-5150
> Facsimile: 713-357-5160

**Counsel for Defendant Texas Independent Providers, LLC**

> Michael S. Burg
> Law Office of Michael S. Burg
> 1842 Snake River Road
> Katy, Texas 77449
> Telephone: 712-627-8885
> Facsimile: 281-717-4395

**Counsel for Robert Vincent Roth**

    R. Tate Young
    Tate Young Law Firm
    5005 Woodway Drive, Suite 201
    Houston, Texas 77056
    Telephone: 713-626-7112
    Facsimile: 713-626-7113

**Counsel for Carolos J. Palacios, M.D.**

    R. Tate Young
    Tate Young Law Firm
    5005 Woodway Drive, Suite 201
    Houston, Texas 77056
    Telephone: 713-626-7112
    Facsimile: 713-626-7113

**Counsel for WellCare of Texas, Inc.**

    Greg R. Wehrer
    Amanda D. Price
    Squire Patton Boggs (US) LLP
    6200 Chase Tower
    600 Travis Street
    Houston, Texas 77002
    Telephone: 713-546-5850
    Facsimile:  713-546-5830

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **INTEGRANET PHYSICIAN** | § | |
| **RESOURCE, INC. d/b/a** | § | |
| **INTEGRANET HEALTH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **TEXAS INDEPENDENT PROVIDERS,** | § | |
| **LLC; ROBERT VINCENT ROTH;** | § | |
| **CARLOS J. PALACIOS, M.D.; and** | § | |
| **WELLCARE OF TEXAS, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

**EXHIBIT A-3**

**FEDERAL COVER SHEET**

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

IntegraNet Physician Resource, Inc. d/b/a IntegraNet Health

## DEFENDANTS

Texas Independent Providers, LLC, Robert Vincent Roth, Carlos J. Palacios, M.D. and WellCare of Texas, Inc.

**(b)**  County of Residence of First Listed Plaintiff   Harris
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Logan E. Johnson and Varant Yegparian, Schiffer Hicks Johnson, PLLC,  700 Louisiana, Ste. 1200, Houston, Texas 77002, 713-357-5150

Attorneys *(If Known)*
Greg R. Wehrer and Amanda D. Price, Squire Patton Boggs (US) LLP, 6200 Chase Tower, 600 Travis Street, Houston, Texas 77002, 713-546-5850 (WellCare of Texas, Inc.)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
  Plaintiff
- ☐ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☒ 2  U.S. Government
  Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|                                                    | PTF | DEF |                                                           | PTF | DEF |
|----------------------------------------------------|-----|-----|-----------------------------------------------------------|-----|-----|
| Citizen of This State                              | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                          | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country           | ☐ 3 | ☐ 3 | Foreign Nation                                            | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|-|--------------------|------------|----------------|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br> & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br> Student Loans<br> (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br> of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br> Liability<br>☐ 320 Assault, Libel &<br> Slander<br>☐ 330 Federal Employers'<br> Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br> Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br> Product Liability<br>☒ 360 Other Personal<br> Injury<br>☐ 362 Personal Injury -<br> Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br> Product Liability<br>☐ 367 Health Care/<br> Pharmaceutical<br> Personal Injury<br> Product Liability<br>☐ 368 Asbestos Personal<br> Injury Product<br> Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br> Property Damage<br>☐ 385 Property Damage<br> Product Liability | ☐ 625 Drug Related Seizure<br> of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br> 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br> New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br> 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br> Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br> Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br> Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br> Accommodations<br>☐ 445 Amer. w/Disabilities -<br> Employment<br>☐ 446 Amer. w/Disabilities -<br> Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br> Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br> Conditions of<br> Confinement | ☐ 710 Fair Labor Standards<br> Act<br>☐ 720 Labor/Management<br> Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br> Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br> Income Security Act | ☐ 870 Taxes (U.S. Plaintiff<br> or Defendant)<br>☐ 871 IRS—Third Party<br> 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br> Actions | ☐ 899 Administrative Procedure<br> Act/Review or Appeal of<br> Agency Decision<br>☐ 950 Constitutionality of<br> State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original
  Proceeding
- ☒ 2  Removed from
  State Court
- ☐ 3  Remanded from
  Appellate Court
- ☐ 4  Reinstated or
  Reopened
- ☐ 5  Transferred from
  Another District
  *(specify)*
- ☐ 6  Multidistrict
  Litigation -
  Transfer
- ☐ 8  Multidistrict
  Litigation -
  Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1395 et seq.

Brief description of cause:
Removal from State Court

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
04/29/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ Greg R. Wehrer

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____